**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AUG 11 2005

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

vs.

    No. CIV 04-1359 JP/LCS
    No. CR 03-464 JP

RENE CANTU,

    Defendant/Movant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Defendant's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, filed December 3, 2004 [Docket #1]. Defendant attacks the Sentence entered on November 6, 2003 in the case styled *United States of America v. Rene Cantu*, CR 03-464 JP, United States District Court for the District of New Mexico. The United States Magistrate Judge, having reviewed the Petition and having considered the submissions of the parties, the record herein, relevant authorities, and being otherwise fully advised, recommends that Defendant's Petition be **DENIED**.

**I.     Procedural History**

1. On December 31, 2002, officers of the Hobbs, New Mexico Police Department executed a search warrant on a residence located at 712 S. Dalmont, Hobbs, New Mexico. As a result of the search, 3 grams of methamphetamine were discovered and Rocky Green, owner of the residence, was arrested. Green then explained that he sold and used methamphetamine and that he got most of his methamphetamine from an individual named "Pato", who lived on Elm Street in Hobbs, New Mexico.



2.  Green gave the officers a description of his past transactions with Pato and gave the location and a description of Pato's residence. Later that evening, Detectives Rodney Porter and Stan Durham traveled to Elm Street and observed a residence which was substantially as Green had described. As a result, Detectives Durham and Porter obtained a search warrant and arrived with officers of the Hobbs Police Department at 1009 S. Elm Street to execute the warrant.

3.  After knocking and receiving no response, the officers entered the residence through the unlocked front door. The Defendant, Rene Cantu, was discovered in a bedroom. Cantu was asked if he had any illegal substances on his person, to which he responded he had something in his left pants pocket. Approximately one-half ounce of methamphetamine was discovered in Cantu's pocket.

4.  During the subsequent search of the residence, a 30 caliber, semi-automatic rifle was discovered by the side of Cantu's bed and a magazine for the rifle was found on a nearby night stand. A Taurus 9 mm handgun was found in an open dresser drawer located near the bed. A second Taurus 9 mm handgun was discovered in the top of a closet in the master bedroom. Additionally, a black box was discovered under the night stand containing methamphetamine. The methamphetamine confiscated while executing the warrant weighted approximately 337 grams. Officers also discovered packaging items consistent with distribution, as well as a baggie containing cocaine residue.

5.  On December 31, 2002, Mr. Cantu was charged by criminal complaint with violating 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(viii), possession with intent to distribute 50 grams or more of methamphetamine, and 18 U.S.C. § 924(c), possession of a firearm in

2

furtherance of a drug trafficking offense. [Docket #1; 03cr464].

6.      On March 5, 2003, the Defendant was indicted on the following counts: 1) possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii); 2) maintaining a place for the distribution of a controlled substance in violation of 21 U.S.C. § 856; 3-4) possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). Had the case gone to trial, the combined mandatory minimum sentence for the four counts would have been 40 years. The Defendant was arraigned on March 20, 2003, at which time he pleaded not guilty. [Docket #18; 03cr464].

7.      On May 16, 2003, the Defendant entered a plea of guilty before the Honorable William P. Johnson, United States District Judge, pursuant to a plea agreement in which the parties stipulated, pursuant to FED. R. CRIM. P. 11(c)(1)(C), to a sentence of 20 years in the custody of the Bureau of Prisons. [Docket # 48; 03cr464]. On September 23, 2003, the Defendant appeared for sentencing before the Honorable James Browning, United States District Judge. The hearing was ordered continued on Defendant's verbal motion after the Court rejected the plea agreement which contained a downward departure from the statutory minimum of 40 years to 20 years. [Docket #53; 03cr464].

8.      After the Court rejected the plea agreement, counsel for the United States and Defendant renegotiated the agreement. The United States agreed to dismiss Count 4 of the indictment, thereby eliminating the mandatory consecutive 25-year sentence applicable if Defendant were convicted under Count 4. The parties agreed that, notwithstanding the new mandatory minimum sentence of 15 years, 20 years remained an appropriate stipulated sentence

for the plea agreement.

9. On November 6, 2003, the Defendant appeared before the Honorable Robert C. Brack, United States District Judge, and entered a plea of guilty to the second plea agreement. [Docket #55, 56; 03cr464]. The Court accepted the plea agreement and guilty plea and sentenced the Defendant to 20 years in the custody of the Bureau of Prisons. [Doc. #57, 58; 03cr464].

10. On December 3, 2004, Defendant filed the present motion to set aside the sentence pursuant to 28 U.S.C. § 2255. [Docket #1]. The § 2255 Motion is timely under the Antiterrorism and Effective Death Penalty Act. *See* 28 U.S.C. § 2255, FED. R. APP. P. 4(b)(1)(A). The United States filed its Response to Defendant's Motion on April 29, 2005. [Docket #8].

### III. Analysis

Defendant raises the following issues in his Petition:

I. Counsel was ineffective in failing to perfect an appeal

II. Counsel's ineffective assistance caused Defendant to receive a sentence greater than that authorized by the guidelines.

III. Counsel's ineffective assistance caused Defendant to plead guilty rather than proceed to trial.

IV. Defendant's plea of guilty violated due process and was unconstitutional

### I. Ineffective Assistance of Counsel

11. A claim of ineffective assistance of counsel is a mixed question of law and fact. *Fisher v. Gibson*, 282 F.3d 1283, 1290 (10th Cir. 2002). Mr. Cantu must demonstrate both deficient performance and prejudice. He must show that counsel made errors that were so serious that counsel's performance could not be considered "reasonable under prevailing professional

norms." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The Court need not address both prongs of the inquiry if Mr. Cantu makes an insufficient showing on either deficient performance or prejudice. *Id.* at 697.

12. Defendant has the burden of showing that counsel's performance "fell below an objective standard of reasonableness." *Miles v. Dorsey*, 61 F.3d 1459, 1474 (10th Cir. 1995)(quoting *Strickland*, 466 U.S. at 688). Mr. Cantu must show that counsel's "identified acts or omissions were outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 690. There is a strong presumption that counsel has rendered adequate assistance and used reasonable professional judgment in making all significant decisions. *Dorsey*, 61 F.3d at 1474.

13. Under the second prong of *Strickland*, Defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the prior proceeding. *Id.* Mr. Cantu, in alleging ineffective assistance, bears the burden of alleging facts which, if proved, would entitle him to relief. Mere conclusory allegations without factual support are insufficient to meet this burden. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**a. Ineffective Assistance of Counsel-Failure to Perfect Appeal**

14. Defendant's first claim of ineffective assistance of counsel is based on his contention that, following his sentencing, counsel never contacted him or consulted with him regarding the possibility of an appeal. [Docket #1]. Defendant claims that he was "abandoned" by counsel and that such abandonment constitutes a per se violation of the Sixth Amendment.

5

[Id.]

15. Defendant's argument misapprehends the nature of his plea agreement. Defendant's plea agreement contained an explicit waiver of his right to appeal under 18 U.S.C. § 3742 and stated that the waiver of such right was made knowingly and voluntarily. [Gov. Ex. 5 ¶ 9]. A defendant's knowing and voluntary waiver of the statutory right to appeal his sentence is generally enforceable. *United States v. Black*, 201 F.3d 1296, 1300 (10th Cir. 2000).

16. During the plea hearing, the Court engaged in an extensive colloquy with Mr. Cantu regarding the nature of the charges and his right to plead not guilty and to proceed to trial. Defendant indicated he understood his rights and wished to proceed with his plea of guilty. [Gov. Ex. #2]. Further, defense counsel indicated he advised Mr. Cantu of the appeal waiver contained in the plea agreement and that Mr. Cantu understood and assented to this waiver. [Gov Ex. #3]. Defendant has not provided the court with any evidence to show that he did not understand either the waiver of his right to appeal or to indicate that he did not voluntarily and knowingly enter the plea agreement. He has therefore failed to show that he was prejudiced by counsel's failure to perfect an appeal within the meaning of *Strickland*. Thus, I recommend denying Defendant's claim that counsel was ineffective for failing to perfect an appeal.

  b. **Ineffective Assistance of Counsel-Sentencing Guidelines**

17. In his second allegation of error, Defendant argues that in spite of having waived his right to appeal his sentence, such waiver was ineffective because his sentence was an upwards departure from the applicable sentencing guideline range. Specifically, Defendant argues he was entitled to an additional one level decrease for acceptance of responsibility, that defense counsel should have objected to the pre-sentence investigation report, and that the district court erred in

failing to state reasons for departing from the sentencing guidelines.

18. The Tenth Circuit has previously ruled that this court lacks jurisdiction to even consider Mr. Cantu's argument. *United States v. Trujeque*, 100 F.3d 869, 870 (10th Cir. 1996). In a similar case, the Tenth Circuit held that, in the case of a plea agreement which includes a specific sentence under FED. R. CRIM. P. 11(e)(1)(c), a defendant may not file a notice of appeal unless the sentence imposed is greater than the sentence set forth in the agreement. *United States v. Prieto-Duran*, 39 F.3d 1119, 1120 (10th Cir. 1994); 18 U.S.C. § 3742(c). In *Prieto-Duran*, the defendant pleaded guilty and a seventy-two month sentence was imposed pursuant to the plea agreement. The sentence specified in the applicable guideline range was sixty to sixty-three months.

19. In rejecting defendant's appeal, the court noted that defendant had specifically agreed to the imposition of a seventy-two month sentence and that such plea had been entered in exchange for the government's agreement to forego filing a sentence enhancement requiring a ten-year term of imprisonment. Similarly, in the present case, defendant pleaded guilty to a specific sentence in exchange for the government's dropping Count 4 which would have exposed defendant to a minimum mandatory sentence of forty (40) years if convicted. Because this court lacks jurisdiction to review Mr. Cantu's sentence, I need not address whether counsel was ineffective in agreeing to the sentence. *See* 18 U.S.C. § 3742(c)(1); *United States v. Denogean*, 79 F.3d 1010, 1013-14 (10th Cir. 1996), *cert. denied*, 519 U.S. 856 (1996).

c. **Ineffective Assistance of Counsel-Entering Guilty Plea**

20. Defendant contends that counsel was also ineffective because counsel provided him with erroneous advice without which he would never have entered a plea of guilty. [Docket

7

#1]. Specifically, Mr. Cantu asserts that his plea was not knowing or voluntary because counsel failed to inform him that his maximum sentence had he proceeded to trial would have been only ten (10) years and one (1) month, whereas counsel induced him to accept an agreement under which he received twenty (20) years in prison. [Id.] He asserts counsel erroneously informed him he could be sentenced to 45 years in prison if he proceeded to trial.

21. As already discussed, Mr. Cantu must demonstrate both deficient performance and prejudice. He must show that counsel make errors that were so serious that counsel's performance could not be considered reasonable under prevailing professional norms, *Strickland*, 466 U.S. at 687-88, and that there is a reasonable probability that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001).

22. Defendant does not argue that the outcome would have been different had he proceeded to trial. Rather, he appears to argue that counsel was ineffective for failing to secure a more favorable plea agreement. This contention should be rejected. As discussed above, Mr. Cantu was charged with violating 21 U.S.C. § 841(a)(1), 21 U.S.C. § 856 and 18 U.S.C. § 924(c). The minimum penalty under § 841(b)(1)(A) is ten (10) years imprisonment. Conviction under 21 U.S.C. § 856 carries a penalty of not more than twenty (20) years. The minimum penalty under § 924(c)(1)(A) is five (5) years. Additionally, if convicted of both counts under § 924(c), Defendant faced a mandatory minimum sentence of twenty-five (25) years.

23. Defendant's minimum exposure was therefore forty (40) years rather than ten (10)

years and one (1) month.[1] The plea agreement recommended a sentence of twenty (20) years, which Defendant accepted in return for the government's agreement to drop charges under Count 4 of the indictment. Defendant therefore received a substantial benefit through his decision to accept the plea agreement and Defendant has failed to show that he was prejudiced by counsel's allegedly deficient performance. *See United States v. Mezzanato*, 513 U.S. 196, 210 (1995)("[W]e have repeatedly held that the government 'may encourage a guilty plea by offering substantial benefits in return for the plea.'"); *see also United States v. Fowler*, 104 F.3d 1368 (Table) 1996 WL 734637 (10th Cir. (Colo.)("We believe that the substantial benefit . . . derived from pleading guilty . . . precludes a determination that any prejudice resulted from counsel's failure to appeal"). I therefore recommend rejecting Defendant's arguments as to ineffective assistance of counsel.

## II.     Violation of Right to Due Process

24.    Defendant next argues that his plea agreement violated due process because he is actually innocent of the charge of possession of a firearm in furtherance of a drug trafficking offense and because there was no factual basis for his plea of guilty to this charge. [Docket #1]. The level of scrutiny of the factual basis for a conviction under § 924(c)(1) depends on whether the defendant pleaded guilty or was convicted by a jury. *United States v. Ruth*, 100 F.3d 111, 112 (10th Cir. 1996). When a defendant has pleaded guilty, this Court must only "mak[e] such inquiry as shall satisfy it that there is a factual basis for the plea." *Id.* (quoting FED. R. CRIM. P.

---

[1] The 121 month figure apparently comes from the presentence report which indicated that, based on Defendant's offense level, the guideline imprisonment range would be 121 to 151 months. However, the Sentencing Guidelines also specify that, "Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." USSG § 5G1.1(b). The appropriate minimum sentence under the guidelines is therefore 40 years imprisonment and Defendant received a substantial benefit by entering a plea of guilty.

11(f)).

25.     Defendant argues that his guilty plea is insufficient because there was no evidentiary connection between the drugs and the guns. Defendant correctly asserts that, to sustain a conviction under § 924(c), "a direct connection must exist between the firearm and the drug offense." *United States v. Radcliff*, 331 F.3d 1153, 1158 (10th Cir. 2003)(quoting *United States v. Iiland*, 254 F.3d 1264, 1274 (10th Cir. 2001)). To establish a direct connection, evidence must be available which shows defendant intended that the firearm be used in the drug trafficking offense. *United States v. Shuler*, 181 F.3d 1188, 1190 (10th Cir. 1999). Defendant argues that evidence was not presented which could establish the necessary connection. Defendant's contention should be rejected.

26.     In order to obtain a conviction for possession of a weapon under § 924(c), the government must demonstrate that, 1) the defendant committed a crime of violence or a drug trafficking crime, 2) possessed a firearm, and 3) possessed the firearm in furtherance of the underlying crime. *Basham*, 268 F.3d at 1206. The "in furtherance of" language requires the government to show a nexus between defendant's possession of firearms and his drug trafficking activity. *Id.* at 1207. Simply showing that defendant was "a drug dealer [who] possessed a gun" is insufficient for a § 924(c) conviction. *United States v. Avery*, 295 F.3d 1158, 1180 (10th Cir. 2002) (quoting *Iiland*, 254 F.3d at 1274).

27.     However, a firearm which is kept available for use if needed during a drug transaction is "possessed in furtherance of" drug trafficking if such "possession in furtherance of" was the intent of the drug trafficker. *Id.* The Tenth Circuit has recognized that intent will often be subject to proof by circumstantial evidence. *Basham*, 268 F.3d at 1208. Factors which the

court should consider include the type of drug activity being conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, the proximity of the firearm to drugs or drug profits, and the time and circumstances under which the firearm is found. *Id.*

28. The evidence in this case indicates that police executed a search warrant on Defendant's residence, based in part upon information from an informant who indicated he had purchased drugs there the previous day from an individual named "Pato." [Gov. Ex. #5]. Defendant asserted during the plea colloquy that "Pato" is his nickname. [Id.] Defendant was discovered in the master bedroom with two packages of methamphetamine in his pockets. The agents found a total of 337 grams of methamphetamine in the master bedroom, along with packaging material which smelled of methamphetamine. [Id.] The methamphetamine was found in a box which also contained a compact digital scale.

29. Also in the master bedroom, detectives found an M.130 caliber semi-automatic rifle with a detachable magazine. The magazine for the rifle was found on a nightstand, under which was found the box of methamphetamine and the scale. This magazine contained 31 live rounds. A Taurus .9 mm semi-automatic pistol was also located in a dresser drawer in the master bedroom along with two magazines for that pistol, each containing ten rounds. [Id.] A loaded Taurus .9 mm semi-automatic pistol containing 7 live rounds was discovered on the top shelf of a closet in the master bedroom. [Id.] The circumstances indicate therefore that three weapons were found in close proximity to the drugs and that these weapons were easily accessible to Defendant.

30. Further, during Defendant's plea hearing, the United States attorney presented the

Court with the following facts: that police had entered Mr. Cantu's home on December 31, 2002 pursuant to a valid search warrant, that upon finding Mr. Cantu and searching the residence they found a quantity of methamphetamine as well as a digital scale and packing material, that the officers also found what appeared to be a drug ledger, and that three firearms were found in close proximity to the drugs. [Gov. Ex. #2].

Following this recital, Defendant engaged in the following exchange with the Court:

The Court: Mr. Cantu, you heard Ms. Burnham relate the facts a moment ago. Is it true that when the officers came to your house in December of 2002 that they found these things, the scales, the 300-plus grams of methamphetamine, and these weapons?

Defendant: Yes, sir.

The Court: And did you know all of those things were there?

Defendant: Yes.

In accordance with *Avery* and *Ruth*, I recommend finding that the district court properly satisfied itself that there was a factual basis for Defendant's plea of guilty and that Defendant's argument that acceptance of his plea violated his right to due process be rejected.

## RECOMMENDATION

I recommend that Defendant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed December 3, 2004 [Docket #1] be **DENIED**. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A

party must file any objections within the ten day period if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE